Before this panel today, there are five cases, two of which are submitted on a record, three will be presented orally for purposes of the record at the court. The two submitted cases are 2010-5072, Underwood Livestock v. U.S., second one is 2011-7004, Moore v. DBA. First argued case is number 2010-1236, MOVE INC v. REAL ESTATE ALLIANCE. The second case is 2011-1237, MOVE INC v. REAL ESTATE ALLIANCE. The third case is 2011-1238, MOVE INC v. REAL ESTATE ALLIANCE. The third case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The third case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The fourth case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The fourth case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The fifth case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The fifth case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The sixth case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The seventh case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The eighth case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The ninth case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The ninth case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The tenth case is 2011-1239, MOVE INC v. REAL ESTATE ALLIANCE. The last What about column 11, lines 23-25, talking about the user completing his boundary location selection, and again at column 9, lines 63-65, once the user has selected his search boundary by selecting an appropriate circle that data may be saved or changed, why isn't the preferred embodiment repeatedly throughout the spec, which refers to a user doing the selecting of the boundaries, are you saying that claim 1 excludes the preferred embodiment? No, no, Your Honor. The claim includes it. The district court erred by saying that it is essential that the user be there. So your construction is not that the computer selects, but that the claim is not limited to a user doing the selecting, either a user or a computer could select, and this claim would still be infringed. I agree with that, Your Honor. With one qualification? No, please, go ahead. With one qualification, and that is the preamble says that it is a device using a computer, and that's a preamble to claim 1. It's a method using a computer for locating available real estate properties, and so the computer is there. Our burden on this appeal is not to show— Anyway, don't move on because it doesn't make sense. Did you just agree with me and then proceed to disagree with me using a different language? Not intentionally, Your Honor. Is element C, does element C apply to either a user or a computer doing the selecting, regardless of the preamble, or are you saying the preamble limits element C to only the computer? So let me try to be clear, and I apologize. To the extent that a human user is selecting on this side of the plane, that is not enough for infringement. The selecting that's being done here is being done at the host computer. All of the elements are being done at the host computer. So then it would seem to me if the host computer is the one selecting the boundaries, then it seems to me the preferred embodiment would be read out of the claims in light of the two specification passages that I just cited you to. No, what's happening there is that the human user is drawing a box and wants to find properties, and then what's happening is that in the computer there is selecting going on, and I think the claim is broad enough to embrace— No, what selecting is going on? There's no selecting, there's just the identification of the coordinates that correspond to that box. It's not selecting. The computer isn't choosing anything. The computer is simply converting the box into coordinates. The computer is selecting among the total universe of coordinates, those world coordinates that it is selecting. When the human user looks for pinpoints, a part of the map that's outside the world coordinate boundaries, the computer adjusts that, the computer fixes that. The computer most certainly is, as we understand this claim and as presented to the district court, is selecting, selecting, choosing among, and I think all we need to show is that don't read out. How is the computer choosing? When a user identifies boundaries which are within the world coordinate map, how is the computer choosing? I mean, isn't the computer simply identifying the numerical coordinates that correspond to the lines the user has chosen? Except in the case where the computer overrides it, yes, but yes, the computer is doing the selecting because that's a fair and reasonable reading of the term selecting. You said yes, but your answer was no again. You know, what I'm saying to you is I don't see how the computer is doing any selecting when the coordinates are within the world map. I understand your example about adjustments. If someone chooses coordinates outside the scope of the map, the computer will adjust and thereby arguably choose the boundaries, but apart from that example, when a user is selecting something within the map, it's the user doing the selecting. All the computer does is convert it into boundaries, coordinates. The user is never selecting the world coordinates, and it is our view that... Sure they are. They just don't know the numbers. They're selecting the world coordinates. They just don't know what numbers those world coordinates correspond to. For purposes of this appeal, we don't have to prove that it's only the user. All we have to show, I think, is that the computer, in some fair sense of the word, is selecting. Mr. Solomon, where in the specification is the part of the computer or the part of the software that is doing the selecting? In the specification... When you say the computer selects, what part of the computer is doing the selecting? What part of the computer? Yes. The host computer that is creating and finding the world coordinates. There are diagrams that are shown in the appendix. There's even a diagram shown, diagram 5 and 6, sheets 5 and 6 of the patent itself, where the world coordinates are retrieved from memory, and that's what it says in column 11. I don't see how it says the last selected. That's the term that's being used. Selected. Most current world coordinates are retrieved from memory. Yeah, well, this is the point I made earlier. It talks about what is selected, but the question still remains as to what or who is doing the selecting. And the claim is broad enough so that it doesn't limit what or who is doing the selecting, and that's where the district court, we believe, got it wrong, because the district court is insisting that only the human is doing the selecting, that the human is required to do the selecting, and that was the error. Let me give you an example and see if this is what you're arguing or explaining to us. So certainly the user could do the selecting. If we found when the user puts the box up, if we conclude that's the user doing the selecting, that would be covered by this claim, right? I'm not sure whether I should say yes or no. Don't say no. That is an embodiment that we believe is covered. It's not the only embodiment covered. So let me give you another example of what would be the computer selecting. Suppose I put in I've got four children. These are their ages. I need to live in general in northern Virginia. Here's where I'm going to work. And I let the computer completely figure out where would be good boundaries based on schools or other criteria. That would be a true computer selection. It is, in fact, defining the boundaries of where my search should be based on totally personal criteria that I give it. That's something where the computer would be selecting the boundaries, and you believe that would fall within this claim as well, right? Yes, we do. So that's the distinction. One of the distinctions are ways that you could give an example of user select versus computer select, and you think both of them would fall within this claim. Yes. I think selecting the world coordinates is clearer only because that's in the specifications, and it's in the appendix, and it's words there that we thought were very straightforward, that this selection of the world coordinates is then being used to redisplay the points and then to zoom. And what the district court read out, that embodiment, that was the error. Reading out the specified embodiment, not the only embodiment that was there, but to read it out was error. And I see that I am out of time. I wanted to save some time. Before we go to some of your rebuttal time, can you answer Judge Warren's question regarding the selection process? Because that still is a question in my own mind as to whether or not the selection is done by the computer or input by the human being, bridging the two steps. The human being, as was the case in— Yes, as defined by the rule of law. As was the case in Unilog and several other cases, we need human beings there to participate. They are not essential, however, to the claims that have been made. The use of the term selecting in braces is broad enough to include the actual specification, the actual embodiment where the computer is selecting the world coordinates. World coordinates are not being given by the user. It is the computer that is doing that selecting. And then it is those world coordinates that are then used, those selected by the computer, are then used to perform the other steps that are in the claim. I hope I've answered your question. Thank you. I will now restore three minutes of reply time. May it please the Court. My name is Robin McGrath, and I'm here representing the Appellee Move, Inc. In order to affirm the district court's judgment of non-infringement, this Court need only affirm the district court's construction of any one of three claim phrases in particular, and that's the two selecting phrases and the phrase appropriate geographic area. In analyzing why the district court correctly construed the selecting steps to require that a person be doing the selecting, it's very important to keep in mind the primary purpose of this invention, which is to give people who are looking to acquire real estate much more control over the selection process by allowing them to define and specify exactly where they want to search for property as opposed to choosing some system-defined location such as a political subdivision or a zip code. But isn't that the first step, the first input made by the user in selecting a particular geographical location? The first, I'm sorry. If, in fact, someone wanted to live in Washington, D.C., would they select Washington, D.C. as the geographical coordinate? Well, what's supposedly the inventive aspect of this particular invention is that the user can draw the circle around D.C. or if it wants to look in D.C. in some suburb in Virginia as well, it can draw the boundary. But none of that drawing is in this claim. None of that drawing. I mean, that might well be the preferred embodiment, but this claim contains no similar language. Well, respectfully, it's not just the preferred embodiment. This is a patent that consistently and without exception we cited on pages 21 to 25 of our brief in places like the abstract, the theory of invention. Whether they said it once or a thousand times, it doesn't matter unless it amounts to a clear disclaimer. Show me where there's a clear disclaimer of anything other than using this first selection cursor circle thing. Absolutely. If you look at the background of the invention, it criticizes the prior art saying that you have to basically I'm sorry, yes. It's lines 20 to 24 of column 1. In the background of the invention, what it's doing here is it's saying, look, in these prior art systems, you have to know the area. You have to have intricate knowledge of the different names of the political subdivisions. But show me the language that amounts to a disclaimer, not your interpretation of what the background says. Sure. What words particularly. All right. So in the patent, it's where I just pointed. In the file history. So tell me the words. Read me the words aloud, and I want to hear how they amount to a clear disclaimer of anything other than a first selection cursor. Well, all right. It talks about the search of the stored information being dependent on the operator's intricate knowledge of the local area and subdivisions. And then in the last sentence, we're starting at about 27. It says no provision for searches by multiple criteria, including geographic location, is made in the prior systems. Geographic location consistently in the prior art is referencing, is distinguished from political subdivisions. It's pinpointing using the cursor. If you look in the file history. I'm just finding it difficult to understand how that sentence amounts to a clear and unmistakable disclaimer of anything other than causing a boundary to be superimposed over the displayed map using the first area selection cursor. This is just not a tenable argument. If you take that sentence and you add it to what the applicant argued in the file history, where on pages 870 and 871 of the appendix, it says the prior art can't select properties by applying a boundary to a graphically displayed map, whereas this invention can. In a multitude of cases, such as on-demand and others, this Court has held that where there is a general description of a Sorry, I'm a little slower than you are. I'm sorry. Where on page 870, 871 is the sentence that you're referring to? I'm on page 870 and 871, which is the argument in response to a rejection. Right. It starts on 870. It's talking about the multiple listing service. Multiple listing service systems currently used, although implemented on computers and employing databases of available properties, do not contain the absolute geographic locations of the properties listed and thus cannot select properties based upon an indication of In the file history in connection with the 989 on pages 1007. Okay, hold on. Let's not jump from one to the next because you've got to find a clear and unmistakable disclaimer. And so far, nothing in the patent has amounted to one. So I'm trying to figure out if this sentence could. So in this sentence, they say that nothing in the multiple of the MLS services currently in use contain They do not contain the absolute geographic locations of the properties listed and thus cannot select properties based on an indication of strictly geographic area, particularly one designated by applying a boundary to a graphically displayed map. And you think that that is a clear and unmistakable disclaimer of anything other than a, even though it doesn't use the words first selection cursor and that particular method for finding boundaries, you think that sentence amounts to a clear and unmistakable disclaimer of anything other than using a first selection cursor methodology for identifying a boundary. I think it amounts to a clear disavowal of any system that does not use the boundary to identify the search area. Now, based on this, then, you would agree that a boundary could be the identification of a state. I could say I want to look in the state of Washington or the state of Virginia, right? Because how would that not be completely consistent with this sentence? No, I disagree because the MLS system that it was distinguishing did just that. In the MLS systems, the way that users searched for property is they would say, I want to search in Washington or I want to search in some political subdivision, this zip code or this city. And what you're saying is that's not what we have here. What we have here is the ability to use a boundary to cross city boundaries or to cross zip code boundaries to define specifically where the user wants to search. Now, the district court used the terminology first area selection cursor, and if you look at how the district court defined that, he was really referencing the tool used to create the boundary. And I think you could take... And do you agree that it's improper for him to import into the claim the exact tool that was articulated in the spec? He actually didn't identify any tool. He just said a tool, whatever tool that, you know, he didn't specify a mouse or any specific kind of tool. He just said you got to create this boundary using a tool, and he didn't specify which tool it is. Actually, he didn't say using a tool. He said using the first area selection cursor. Boy, that sounds like a tool. But he defined first area selection cursor as a tool. I don't have the exact words, but something to the effect of as a tool used to position the boundary. So it's whatever tool the system has set up that used to draw that boundary, that's how he defined it. You don't need to reference the tool used as long as you're referencing the boundary. Now, I'd like to address... Excuse me one second. With respect to the boundaries that you're talking about, you're saying it's not limited by political boundaries. It can be any boundary that's drafted by the user. So it's multiple political boundaries. It could be Washington, D.C., and its outlying suburbs. Is that the difference between this and the MLS system? The difference is in the MLS system, you have system-defined areas that are along political subdivisions, a city, a school district. Well, it's a little bit broader than that, though, isn't it? That's what the MLS service did. You could say, I want to search in the XYZ school district. I want to search in Los Angeles. Which could cover more than one political boundary. It's defining the political subdivisions. The system defines it. The user can't say, I want to search in part of this one and part of this one. You've got to search in whatever the MLS system provides to you, whereas here, the user is deciding. I want to search in all of these areas, or I want to search within this area. I really do want to address, if I've satisfied your question, I want to address this notion of the host computer selecting, because Reel spent a lot of time on that in the brief, and Mr. Solomon spent a lot of time on that today. What they're pointing to is column 11 in the patent. There are two main issues with that argument. Column 11 isn't addressing the host computer at all. It's talking about figure 5, which is a more detailed display of a portion of figure 4. And if you look in column 10, figure 4 is addressing the remote system, not the host system. The remote system is the computer used by the user. It's where the search file is created. Host system doesn't get involved until that search file is completed and it's sent on. Second, on to the host computer. Second, as Judge Moore pointed out, that passage, if you look at the entirety of the passage, it's not saying that the host computer or the computer is selecting anything. It's consistently referring to the user's location selection, and then it talks about the computer's retrieval. But even if this court were to find that the host computer or some computer were selecting world coordinates, the claims do not say selecting the world coordinates associated with the first area. World coordinates are simply numbers, latitude, longitude, identified with a particular area. Claims don't address world coordinates at all. It addresses selecting a first area having boundaries, and in every single reference in the specification to the selection of areas and boundaries, it is referring explicitly to the actions of the user. Even Reel concedes on pages 18 and 19 of its reply brief that the user is selecting the visual boundary. Reel also conceded in the joint claim construction, and this is very important. In the joint claim construction brief, Reel argued that the plain and ordinary meaning of the word's first area is a geographic area of interest to the user. A computer cannot possibly know what is of interest to the user. That's something only the user can do. So even if the computer is selecting the world coordinates, that underlying world coordinate selection is not what the claims are referring to. They are referring to the selection by the user, and you can see that in the other elements of the claim. I brought my example to a closing council, the example that I put in that my criteria, which is based on personal information to me, but not at all about specific boundaries in terms of coordinates, and the computer then identifies the boundaries that would be appropriate in various areas it would be appropriate for me to live in. That would be entirely a computer selection of the boundaries, even though I would be inputting my personal criteria. We're not here to argue that a computer can ever select. We're simply arguing that in this claim, the way it's drafted, the claims aren't referring to any selection being done by a computer. It's referring to the selection being done by the user. I don't see that in the claims. Well, let me point out to you. So element F talks about the selection of a second area having boundaries. That's followed by element G, which says displaying the second area. Whatever was selected in element F, that's what's being displayed in element G, and the only thing being displayed, not the world coordinates, but the visual representation of the user's selection. And in the prosecution history, too. I don't follow how that means the user must be doing the selecting just because the computer is doing the displaying. No, no, no. It doesn't make sense to me. I'm sorry if I misspoke. The user is selecting the first area having boundaries. So the question is, what is the first area having boundaries? Is that a reference to the world coordinates, or is it a reference to the boundary that the user drew? I understand that your point is that the user's selecting, but my problem is I don't see anything in the claim that indicates that it has to be a user doing the selecting. And so I'm asking repeatedly for you to help me understand where in the claim it indicates that the user is a limitation. Because it's saying what is being selected. If it said selecting the world coordinates, then, you know, they may have a really good argument. But it doesn't. What it's pointing to as having been selected, first area having boundaries. Every reference, like I said, in the spec, but not in a preferred embodiment. We're talking in the abstract, in the theory of the invention. Every time the word area or boundary is used in connection with selection, it's talking about what the user is doing. And so the case law is pretty clear that if this is the invention itself, then it is appropriate to take otherwise broad claims and to construe them narrowly to comport with what the invention is. And in the claims themselves, we're talking about the selection of the first area. Element G makes clear that the first area is not the coordinates, but it's what's displayed. The prosecution history real argued that the areas recited in the claims are visually displayed. It's actually distinguished the prior art on that ground. And if you look on page 998 of the appendix, you'll see that the examiner agreed. The examiner said that applicants' improvement over the prior art. I'm sorry, I see my time is up. Can I finish? Go ahead. Okay. Applicants' improvement over the prior art consists of allowing the operator to designate desired areas. I know that Reals tried to disavow themselves with that statement, but I'll just point out quickly before I stop. They actually cited that statement in support of their claim construction position in the selecting phrase in the joint claim construction brief. Just one more quick question. Is your argument, referring to column 11 now, is your argument of selecting the fact that when the specification says, column 11, lines 14, 15, whether the user has completed his location boundary selection, and then it goes on to say, if the user has completed this selection, then something happens. Then it goes down about line 22. If the user has not completed his boundary location selection, then something else happened. So is your argument that that's where in the specification it's referring to actions of selection by a user and nowhere else in the specification? Is there any suggestion that anybody else or anything else is doing the selection? There's a lot of places. You can look at the abstract itself, which talks about the user selecting an inner area. You can look at the theory of the invention, where it talks all about the user moves the boundary to select the area. That's column 1 under theory of the invention. But even if there are repeated instances of that sort, that doesn't necessarily mean that that's the only thing that does the selection. Well, it's the only thing in this invention that the patent describes as having designed the selection, and it's certainly the absolute only thing that this invention describes as having selected areas or boundaries, which is what the claims say. Just out of curiosity, were these originally filed claims? Were these originally filed claims that issued? No. They were amended through a prosecution history, and they started with the 576 patent. Thank you. Three minutes, if you need. Yes. I actually respectfully disagree with opposing counsel as to what this Court's jurisprudence says. The Court's jurisprudence, I believe, is quite clear that even if there were only one embodiment described in the specifications, we would not limit the claim language for that reason alone. This patentee did what it could in the 989 patent, which was the continuation patent, to make clear that it was claiming something broader than what it had before the district court erred by narrowing it back down. The patentee made clear to the public at large, right before the claim started, which said that what's gone before is solely for illustrative purposes. Do not rely on that. Rely only on the claims. And I think even if there were nothing in the specifications that used the word selecting, used the word zooming, appropriate geographic detail, in the way that the claim terms admit reasonably, we would be entitled to claim that, and we have. But, in fact, we do. There is no way that you can retrieve from memory, if you're talking about a human user, and Column 11 talks about the last selected world coordinates are retrieved from memory. The memory that we're talking about is not the human memory. It's the computer's memory. And if I could call the Court's attention to pages A, 594. MR. SOLOMON. Mr. Solomon, before you go there, in Column 11, what about the language I mentioned a moment ago? In Column 11, line 15, and then lines 22, it says the user has completed this selection. MR. BOUTROUS. That is right. The user is doing something on the other side of this plane. Without a doubt, we don't dispute that. We don't claim it either. Okay? The user is doing something. The computer is then, that was the benefit. The brilliance of this invention is 1985, and this patentee understood that the computer is then going and selecting world coordinates from the array of world coordinates. It's then taking those world coordinates, and then when the customer or the user wants to zoom in, what's happening is that it is sending the signals then within the computer, are then doing the zooming. And that's what I wanted to end just by reading the language that was disclosed. We're talking about A594. We're talking about the host system. That's what we're talking about here. And the diagrams that you're being shown are from the host system. This is from the A594. We then go and we're told that the host system chooses an arbitrary world coordinate data point, and that is then used when it says zooming down is then accomplished by setting the world coordinate boundaries equal to the boundaries of the rubber band box being displayed. So the disclosure is that when you're zooming, when you're selecting inside the computer, you are accomplishing that by taking the world coordinate boundaries, which were the boundaries selected by the computer, and making them equal to the boundaries of the rubber band box being displayed. So even if it were our burden to try to find how the plain language of the claim should be broad and not narrowed, we have shown it here. Thank you very much.